## INHABITANTS OF NEW MARLBOROUGH *vs.* COUNTY COMMISSIONERS OF BERKSHIRE.

Under the Rev. Sts. *c. 24,* the question whether an adjudication as to a highway or a town way, made by county commissioners at the time of their view or at a special meeting, is to be regarded as final, or as subject to confirmation or reversal at a subsequent regular meeting, is to be determined by their intention, as manifested by their records.

On a petition to county commissioners to alter a town way according to a report of selectmen, which the town was alleged to have unreasonably refused to accept, the commissioners gave notice to the town, had a view, and afterwards, at a special meeting, ordered that the petition be dismissed : This order was not recorded, nor filed with the clerk for record : At the next regular meeting of the commissioners, they ordered that " said report be not accepted," allowed the petition to be amended, and proceeded anew. *Held,* that the order at the special meeting was not final ; that it was lawfully vacated at the regular meeting ; and that the commissioners were thereupon authorized to proceed anew.

A petition to county commissioners to alter a town way according to a report of selectmen, which the town is alleged to have unreasonably refused to accept, may be amended, even after a hearing of the parties on the petition, by striking out the alleged unreasonable neglect of the town, and substituting an allegation of the unreasonable neglect of the selectmen to alter the way.

An amended petition to county commissioners may well be signed by the petitioners' attorney, although they signed their own names to the original petition.

The omission of county commissioners to take a new recognizance for costs, upon an amended petition for an alteration of a town way, is no ground for a writ of *certiorari* to remove the record of their proceedings in altering the way conformably to such petition.

A petition to county commissioners to alter a town way alleged that the town had unreasonably refused to accept the report of the alteration thereof by the selectmen ; and notice of the petition was served upon the town : The petition was afterwards amended, by striking out this allegation and alleging that the selectmen unreasonably refused to alter the way. *Held,* that a new notice to the town, by service of a copy of the amended petition only, was sufficient.

A defective notice, given to a town, of a petition to county commissioners to alter a town way, is no ground for a writ of *certiorari,* on the application of the town to remove the records of the commissioners' proceedings, if the town acted on such notice and appeared before the commissioners.

The omission of selectmen to make a written report to the town of their alteration of a town way, on a written petition for an alteration, is such a refusal or neglect to alter it as gives jurisdiction of the matter to the county commissioners, under the Rev. Sts. *c. 24,* § 71.

The costs of proceedings before county commissioners, in the alteration of a town way, are matter of discretion with the commissioners ; and a writ of *certiorari* will not be granted for the purpose of revising their adjudication as to such costs.

PETITION for a writ of *certiorari.* It was alleged in the petition, that Samuel Pettibone and others, on the 23d of January 1844, made a written representation to the county com-

missioners, that public convenience and necessity required an alteration in a certain town way in New Marlborough ; that said Pettibone and others, in September 1843, petitioned the selectmen of New Marlborough to lay out said alteration, and report their doings to the town ; that said selectmen reported an alteration in said town way, and that the town, at a meeting held on the 13th of November 1843, unreasonably neglected to accept said report ; wherefore said Pettibone and others petitioned the county commissioners to view said alteration, and cause the same to be established as a town way : That said commissioners thereupon determined to view the premises, and hear all parties interested, and appointed the 14th day of March 1844, as the time, and the house of Seth Norton, in New Marlborough, as the place, for such hearing : That said commissioners gave notice to all parties interested, and met at the time and place aforesaid, and adjourned to the 9th day of April 1844, when they proceeded to view, and heard the parties, and further adjourned, for consideration, to the 8th day of May 1844, when they met at Pittsfield, and considered the whole matter, and adjudged and determined that the town of New Marlborough did not unreasonably refuse or delay to approve and allow the said town way, and thereupon ordered said petition to be dismissed, with costs : That afterwards, at a meeting of said commissioners, held at Lenox, on the first Tuesday of July 1844, the said petitioners (Pettibone & others) presented a petition to said commissioners, by I. Sumner, their attorney, praying leave to amend their former petition ; and that the commissioners then and there received and allowed an amendment, in which it was alleged that the selectmen of New Marlborough unreasonably refused and neglected to alter the town way mentioned in said first petition, although thereto requested in writing by said petitioners and other inhabitants of said town, within one year from said first Tuesday of July ; and praying the commissioners to cause said town way to be altered, to ascertain the place and course of the way, and to estimate damages : That the commissioners, upon said amended petition, determined to

view the premises and to hear all parties interested, and appointed the 29th day of August 1844, as the time, and the house of Seth Norton, in New Marlborough, as the place of meeting for such view and hearing, and ordered thirty days' notice of said time and place of hearing to be duly given : That the commissioners met. pursuant to said appointment, and after hearing objections, from said town, against their proceeding, they viewed the premises and heard the parties, and adjudged and determined that the selectmen of New Marlborough had unreasonably neglected and refused to lay out and alter the town way within the termini set forth in the petition, and that common convenience and necessity required that the same be laid out and established as a town way : That the commissioners, on the 8th of October 1844, laid out and established the said town way, as prayed for, and ordered said town to make said road, at its own expense, by the 1st of May 1846 ; and also ordered and adjudged that said town should pay all damages to the owners of the land over which said way should pass, amounting to $243·37, and also all the costs of prosecuting, as well on the original as on the amended petition, amounting to $134·20.   Wherefore the present petitioners prayed that the record of the said proceedings of the commissioners might be brought before the court and be quashed.

A certified copy of the record and minutes of the proceedings of the commissioners, which accompanied the petition, showed that the allegations in the petition were truly made ; and that, at the commissioners' meeting in July 1844, it was ordered that the report made at Pittsfield " be not accepted," and that said Pettibone and others " have leave to amend their petition, as on file."   It also showed that the second notice to the town was served by publishing, &c. an attested copy of *the amended petition only ;* that the town appeared, pursuant to said notice, by their agent and attorney, who objected to any further proceedings being had by the commissioners, on the ground that the town had no legal notice of the original petition, but only of the amendment thereof, and that no

36 *

recognizance for the payment of costs was taken on the amended petition; and that these objections were overruled by the commissioners: That the petition of Pettibone and others to the selectmen was thus: " Feeling that the public convenience requires an alteration in the road leading from Newton Kasson's to Calvin Ward's, commencing near the foot of the hill east of James T. Rhoades's, and running near the river, until it intersects the old road; we ask you to view and survey the said premises, and call a town meeting, as soon as may be, and lay it before them:" That the selectmen made and signed what they termed a " survey of a highway near James T. Rhoades's, beginning at a stake and stones standing south $78\frac{1}{2}$ degrees west of the chimney of Newton Kasson's dwelling-house, and south 51 degrees west of the chimney of Mr. Utley's dwelling-house; thence south $40\frac{1}{2}$ degrees west, seven rods and three links, to a stake and stones; thence " (by numerous courses and distances) " to the travelled road near Calvin Ward's dwelling-house:" That said survey was filed with the town clerk, seven days before the town meeting which was called to act thereon: That the selectmen, in the morning of the day of said meeting, assessed damages to each owner of the land included in said survey, and reported them verbally at said meeting, without signing any paper concerning said assessment; and that no written report of the laying out or alteration of said way was made by the selectmen.

*Byington*, for the petitioners. 1. The original petition was ended when the respondents dismissed it, and it could not be revived by an amendment. It will be argued, that as the order of dismissal was made *in pais*, and was not ratified *in banco*, the respondents had a right to proceed as if nothing had been done *in pais*. But the answer is, that by the Rev. Sts. *c.* 24, § 4, an authoritative and final judgment or order may be rendered, in the country, by the commissioners, " either at the time of the view, or at any regular or special meeting, or any adjournment thereof." The meeting at Pittsfield was a special meeting, or an adjournment of a special meeting,

and the order of dismissal was then rightfully passed, and should have been entered of record at the next regular meeting at Lenox. See *Hull* v. *Inhabitants of Berkshire*, 9 Pick. 553.

2. If the order of dismissal at Pittsfield was not *finis litis*, yet the respondents had no authority to allow, by way of amendment, an entirely new and different petition. A new petition should have been filed, which should have been *signed by the petitioners ;* and proceedings *de novo* should have been ordered.

3. A new recognizance should have been taken for costs on the amended petition, as those costs were not covered by the recognizance taken on the original petition. Rev. Sts. *c.* 24, § 41.

4. Notice of the whole petition, original as well as amended, should have been served on the town, in order to give jurisdiction to the commissioners. Rev. Sts. *c.* 24, § 2. *Inhabitants of Rutland* v. *County Commissioners*, 20 Pick. 71. This objection was made at the first opportunity, and was improperly overruled by the respondents. *Commonwealth* v. *Westborough*, 3 Mass. 406. *Inhabitants of Danvers* v. *County Commissioners*, 2 Met. 185.

5. The selectmen did not unreasonably refuse to lay out the way. They executed their power defectively ; but this did not give the respondents authority to proceed upon the ground of a refusal by the selectmen.

6. The costs of the proceedings on the original petition were unwarrantably imposed on the town.

*Sumner*, for the respondents. 1. There has been *no adjudication* that the original petition should be dismissed. The respondents, as a viewing committee, held that the petition was not supported, and should therefore be dismissed. As a court, they afterwards refused to dismiss the petition, allowed an amendment thereof, and ordered notice of the amended petition. After notice, and a full hearing on the part of the town, the respondents proceeded to make the alteration in the way, which was prayed for. Whether they might have adhered to the views which they had at Pittsfield, and have

caused an entry, conformable thereto, to have been made at their next regular meeting at Lenox, need not now be decided. Probably they might. But the Rev. Sts. *c.* 24, § 4, do not require that they should do so.

2. The respondents' power to grant the amendment is incident to their office, if not expressly conferred by Rev. Sts. *c.* 100, § 22. And the petitioners could as well act by attorney, in requesting an amendment, as in any other matter.

3. The taking of a recognizance was no concern of the town.

4. Notice of all that was to be acted upon was given to the town, upon the amended petition, and the town appeared and had a hearing, having previous knowledge of all that had been done on the original petition.

5. The respondents have decided, as a fact, that the selectmen unreasonably refused to lay out the alteration in the way ; and that decision is warranted by the record and testimony in the case. *Todd* v. *Inhabitants of Rome*, 2 Greenl. 55.

6. This court cannot revise the order of the respondents as to costs, which are matter of equitable discretion, on a view of all the facts. Those facts are not shown by the record alone.

DEWEY, J. Numerous objections have been taken to the proceedings of the county commissioners in the case sought now to be revised on *certiorari.*

1. The great and leading objection, and the only one which presents any difficulty, or occasion for serious doubt, is that arising upon the course of proceedings required under the Rev. Sts. *c.* 24, § 4. That section applies particularly to highways, but §§ 71, 75, make it alike applicable to cases of proceedings by county commissioners, on application for the location of town ways, where the selectmen unreasonably neglect to lay them out, or the town unreasonably refuses to approve and allow them. Sect. 4 provides, that " the commissioners shall hear the parties, either at the time of the view, or at any regular or special meeting, or any adjournment thereof, as they shall determine ; and as soon as may be after

the hearing, they shall proceed to adjudicate," &c.   The inquiry then arises as to the effect of such adjudication made at the time of the view, or at some special meeting other than the regular term.   Is it to be treated as a final adjudication, and a termination of all action by the commissioners, so that nothing more remains to be done, and that, to all intents and purposes, such adjudication has the like effect as an adjudication at a term regularly holden and attended by a clerk to record all orders ; or is the matter acted upon to certain purposes only, and subject to the control and revision of the commissioners at any time before the same is filed for record at the regular term ?   Looking at the statute, it is quite apparent that, to some extent, it favors the position, that an adjudication at the time of a view is a judgment, a determination which is made the basis of future action and further proceedings, and of proceedings which are to be commenced before the next regular term.   Thus, in § 6, it is provided, that upon an adjudication, made at the view, of the common convenience and necessity of laying out, or of altering or discontinuing a highway, if no person interested shall object, the commissioners may forthwith proceed to lay out, alter, or discontinue such highway.   These latter acts all imply a final determination, already had, of the question of expediency, or common convenience and necessity.   On the other hand, these special meetings in vacation, held at other places than the shire town, and unattended by any clerk or other officer required to record orders and judgments, are certainly of an anomalous character, if the full effect is to be given to decrees made at them, which is given to those made at term, announced to the clerk as such, and by him recorded or noted for record.

The difficulty and embarrassment in the case have arisen from the attempt to unite, in the same board, all the duties formerly performed by the court of sessions at term, and the further duties formerly assigned to special committees, appointed by that court, to make the view and report their opinion of the common convenience and necessity of granting the prayer of the petitioner.   While this practice continued,

*it was very simple and easy of application.* The committee acted in the vacation, but having no final powers, their duty was to report, and the final adjudication was to be made by the court of sessions, at the regular term.

The result of the change has been, as we understand, a considerable diversity in practice, as to the manner in which these adjudications have been considered by the commissioners themselves. In some counties they have, in form, assumed to be nothing more than reports; and the course has been, formally to accept them at the next regular term, before they were filed for record. In others, while less formality of presenting the adjudication for a formal acceptance has prevailed, yet the papers and accompanying adjudication are officially returned and entered as the doings of the commissioners, and ordered to be recorded. Admitting this latter mode to be well authorized by the statute, and supposing it to be competent for the commissioners to treat an adjudication, made at the view, as a final adjudication and determination, and that nothing more is required to be done, but to file the same at the next term, and order it to be recorded; the question then is, whether this is the only course of proceeding that can be sanctioned by law. Now it seems to us, that what is to be taken as the final determination and adjudication of the commissioners must depend upon their own course of proceeding, disclosed by the record of their doings. Their decrees and adjudications are to be learned from the record, which is the only legal manifestation of them. Whenever, therefore, the commissioners themselves set forth the proceeding on the view as a mere preliminary adjudication, to be subsequently confirmed and accepted at a regular meeting, and proceed, at such regular meeting, to deal with it as such, and dispose of it as an open question; and all this before any record has been made, or papers filed for record with the clerk, of an adjudication at the time of view; we must understand that the commissioners, in expressing their opinion at the time of the view, do so *de bene esse*, and that it is not to be regarded as final, until so ordered at the regular term. It is competent for them

so to do; and the only question will then be as to the nature of their adjudication, as indicated by the record finally made up.

In examining this record, although, looking exclusively at the proceedings at the time of the view in May 1844, we might well suppose them to be of the nature of a final determination of the question before them, and that nothing remained but to file the same for record, yet the entire record indicates a different state of things. The record states that, "at the commissioners' meeting, July 1844, after hearing the parties on this report, it is ordered that the same be not accepted." Before placing upon the record their doings at the special meeting at Pittsfield in May, they reconsider the same and reject it. The manner in which the commissioners, in fact, treated their adjudication of May, is quite obvious; and under the view we have taken of the provisions of the statute, it was competent for them to postpone their final action, and to revise their adjudication at any time before the close of the next regular term, if they had not already filed it with the clerk of the court for record, as their final adjudication upon the subject matter. In this way, we may sustain the proceedings in this case, without calling in question the validity of a different course of proceeding already alluded to, viz. making the adjudication at the view, or at some special meeting, and taking no further order thereon afterwards, at the regular term, except to order the same to be recorded.

The provisions of *St.* 1839, *c.* 76, are indicative of the course to be pursued, at least in one class of cases of view and adjudication at the time of the view, and in which further action at the next regular meeting is essential to the completing of the adjudication. The case is that of a discontinuance of a highway, upon the view. The statute provides that the commissioners may, at the same time, adjudge that the said way be discontinued and assess the damages, "and when a return of said proceedings and adjudication is made, at the next regular meeting of the commissioners, and accepted, it shall be held to be a discont'nuance of such highway."

In this class of cases of adjudication at the view, we have, therefore, an express legislative provision, that an adjudication, made at the time of the view, is only final and effectual upon being accepted at the next regular term. The case before us was not of the kind provided for in this statute ; but the reason for such mode of proceeding applies to both classes of cases.

2. The next objection taken is to the authority of the commissioners to allow the amendment made to the original petition, which, it is contended, essentially changed the ground of the application to the commissioners. The original petition alleged that the town of New Marlborough refused to accept a town way laid out by the selectmen, and the amended petition alleged that the selectmen refused to lay out a way duly applied for by the petitioners. This amendment introduces a new cause of complaint, but not new parties. Although the allegation is, that the selectmen refused to lay out the way, still the town is the only party to be proceeded against, in either case. The town is chargeable for the delinquency of the selectmen in this matter, and liable for costs, as much in one case as the other. It was competent for the commissioners to allow such an amendment, and this objection is not sustained.

Nor is the objection, that the amended petition was not personally signed by the petitioners, one that can avail. It was signed by their attorney, acting on their behalf and representing their interests, and was in amendment of the original petition signed by them.

3. To the objection that no new recognizance was taken, various answers may be given. If the amendment was well granted and properly engrafted upon the original petition, the original recognizance would still attach to the proceedings, after the amendment. But the omission to take a recognizance would not furnish any sufficient reason for granting a *certiorari*, and especially where no benefits have been lost by the omission. Here the result of the adjudication is such that the recognizance would have been discharged if it had been given.

4. We perceive no substantial defect in the notice to appear in August 1844, as it distinctly recited the matter upon which the commissioners were to act. Further; it was effectual as notice, inasmuch as the town of New Marlborough acted upon it, and appeared by their attorney; which would of itself be a sufficient answer to an application for a *certiorari* for this cause.

5. It is said that there was no refusal by the selectmen to lay out the way, and therefore there was no case for the action of the commissioners. But we think that the facts show sufficient ground for the commissioners to take jurisdiction under the statute. The proceedings of the selectmen are so essentially defective, and so irregular on the face of them, as to require them to be treated as a neglect and refusal to lay out the way. Without alluding to other defects, it is sufficient to say that the neglecting to report the laying out of the same, in writing, to the town, was a neglect and refusal to lay out the way prayed for.

6. The only remaining objection is that of the amount of costs assessed upon the town of New Marlborough. The entire costs were assessed upon that town. As an original question, it would seem that this was not quite reasonable; and as to the costs incurred before the petition was amended, that they ought to have been paid by the petitioners, before leave should have been given to amend their petition. But we may not be possessed of all the facts bearing upon that question. It was competent for the county commissioners to decide as to the costs, and they having exercised their judgment in the matter, we do not see cause to grant a *certiorari* for that reason.

*Petition dismissed.*